**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

BOYAN SUBOTIC,

      Plaintiff,

v.                        Case No.: 8:21-cv-02137-VMC-SPF

JABIL, INC. a/k/a JABIL
CIRCUIT, INC., a Foreign Profit
Corporation,

      Defendant.

_____/

## DEFENDANT'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT ON COUNTS I-VII OF PLAINTIFF'S COMPLAINT

Pursuant to Fed. R. Civ. P. 56, Local Rule 3.01 and this Court's November 17, 2021, Orders [Dkt. 15, 17], Defendant Jabil Inc. ("Defendant" or "Jabil"), moves the Court for summary judgment on all counts in Plaintiff Boyan Subotic's ("Plaintiff" or "Subotic") Complaint [Dkt. 1], on the grounds that there are no genuine issues of material fact, and that Defendant is entitled to judgment as a matter of law on Counts I-VII.

### I.      GROUNDS FOR MOTION

Defendant is entitled to summary judgment on Counts I-VII of Plaintiff's Complaint because:

(1) Plaintiff cannot establish a *prima facie* case of national origin discrimination under Title VII (Count I) or the Florida Civil Rights Act (Count III) and/or prove that Defendant's legitimate, non-discriminatory reason for his termination is pretext for discrimination;

(2) Plaintiff cannot establish a *prima facie* case of retaliation under Title VII (Count IV) or the Florida Civil Rights Act (Count VI) and/or prove that Defendant's legitimate, non-discriminatory reason for his termination is pretext for retaliation;

(3) Plaintiff's claims under 42 U.S.C. §1981 (Counts II and V) should be dismissed because they are improperly based upon his Serbian national origin, not his race (Caucasian);

(4) Plaintiff cannot establish a *prima facie* case of discrimination (Count II) or retaliation (Count V) under 42 U.S.C. §1981 and/or prove that Defendant's legitimate, non-discriminatory reason for his termination is pretext for discrimination/retaliation; and

(5) Plaintiff cannot establish a *prima facie* case of Florida Whistleblower Act (FWA) retaliation (Count VII) and/or prove that Defendant's legitimate, non-discriminatory reason for his termination is pretext for retaliation.

## II.     STATEMENT OF MATERIAL FACTS

1.       Plaintiff was born and lived in Gradiska, Bosnia before moving to the United States when he was 19 years old and considers his national origin to be "Serbian." (Ex. A, 6:11-20, 43:6-8, 52:7-21).

2.       On April 17, 2017, Jabil hired Plaintiff as a full-time employee in the position of Support Technician II ("Tech II") at Jabil's Defense and Aerospace facility ("JDAS") in St. Petersburg, Florida. (Ex. A, 18:5-7, 34:13-22; Ex. A-21, pg. 1).

3.       Plaintiff self-identified himself to Jabil as "white, non-Hispanic or Latino" and did not identify himself and/or indicate that he was either from Bosnia or of Serbian national origin. (Ex. A, 17:2-18:1; Ex. A-20).

4.       Plaintiff considers himself to be a "white Caucasian male." (Ex. A, 52:22-24).

5.       After becoming employed, Plaintiff admits that he reviewed and executed Jabil's job description for his Tech II position and received a Jabil Handbook. (Ex. A, 18:8-15, 21:23-25; Ex. A-21, pg. 1; Ex. A-3, pg. 4).

6.       Plaintiff admits that he understood that, as part of his job duties for Defendant, he was required to adhere to all Jabil policies and procedures, and that he was to maintain "discretion and confidentiality in all areas pertaining to IT systems" and to "comply and follow all procedures within the company security policy." (Ex. A, 20:20-21:15; Ex. A-3, pg. 2)

7.       Jabil's Global Information Security Policy ("Security Policy") states that:

    a.   "This policy applies to full-time employees, part-time employees, temporary workers, and contractors";

    b.   "All accounts providing access to Jabil information resources must be unique to each individual and must be used only by the assigned individual or approved by Global Information Security";

    c.   "Individuals are accountable for actions associated with their assigned account"; and

    d.   "Jabil considers any violation of this policy to be a serious offense and shall constitute an information security violation. Individuals violating the policies shall be subject to disciplinary action, up to and including termination as well as any civil, criminal, or other remedies available at law."

(Ex. B, ¶ 23; Ex. B-6, pg. 1 - Sections 2.2 and 2.4, pg. 5 - Sections 6.9.4 – 6.9.5).

8.     Jabil's Standards of Performance and Conduct ("Code of Conduct") states that:

If an employee violates any company policy or work rule, a supervisor or manager may discuss it with the employee, or the employee may receive a written counseling, documenting the employee's unacceptable performance or behavior. Depending on the severity of the policy violation, an employee may be terminated immediately, or may be placed on a disciplinary suspension.

(Ex. B, ¶ 23; Ex. B-7, pg. 1).

9.     Jabil's Code of Conduct states the following are "Examples of Inappropriate Conduct":

    a.   "Theft, embezzlement or **misuse of company**, employee, customer, vendor, supplier, or visitor **property** or money";

    b.   "Harassing or discriminating behavior or any other violation of Jabil's Harassment Policy";

    c.   "Deliberately damaging or attempting to damage company, employee, customer, vendor, supplier, or visitor property or money"; and

    d.   "Tampering with security equipment."

(Ex. B, ¶ 23; Ex. B-7, pg. 1-2)(emphasis added).

10.     At Jabil, each employee is assigned an individual Jabil computer account ("Jabil account") which, similar to Office 365, contains access to their Jabil email account and other programs the employee needs for their employment at Jabil.  (Ex. C, ¶ 11). The username for an employee's Jabil account is their 9-digit Jabil employee number. (Ex. C, ¶ 11).

11.     Plaintiff admits that he understood that he was only allowed to access other employees' Jabil accounts for IT service purposes and only when he was requested to do so by the user or his supervisors. (Ex. A, 22:9-14).

12.     As a Tech II, in addition to his regular Jabil account, Plaintiff had a Jabil administrator account referred to as a "Q1" account, which was account number JABILDAS\Q1__100042918. (Ex. B, ¶ 18).

13.     At hire, Plaintiff's direct supervisor was Site IT Manager Romeo Cooper ("Cooper"). (Ex. A, 19:7-13).

14.     In November 2019, Andrew Eells ("Eells") was named IT Supervisor and Eells became Plaintiff's direct supervisor. (Ex. D, ¶8). Eells, in turn reported to Cooper at that time. (Ex. A, 19:22-20:19; Ex. D, ¶ 8).

15.     As his direct supervisor, Eells found Plaintiff's work as a Tech II to be lacking, believing his skills were more of a Support Technician I ("Tech I") level. (Ex. D, ¶¶ 9-11).

16.     Cooper reviewed Plaintiff's performance each year he was his supervisor and found that Plaintiff's performance "meets standards" in 2017 and 2018; however, Cooper found that Plaintiff's performance declined in 2019, rating him only "partially meets standards" and advised Plaintiff that he needed to "improve his support skills as a Support Technician II." (Ex. A, 31:11-32:2; Ex. A-10, pg. 1-3).

17.     Plaintiff admits that he does not believe he was discriminated against on any basis while working at Jabil in 2017, 2018 or 2019, and that he was not being discriminated against in anyway in 2020 until around two (2) months before July 31, 2020. (Ex. A, 25:15-26:3, 59:2-60:1).

18.     On May 18, 2020, Cooper was demoted from his position as Site IT Manager due to his failure to hold the IT team accountable and Natasha Holton ("Holton") was laterally moved from the position of Quality Manager to the position of Site IT Manager; Eells remained Plaintiff's direct supervisor, now reporting to Holton. (Ex. B, ¶ 4; Ex. C, ¶ 6; Ex. D, ¶ 8).

19.     When Holton was promoted to Site IT Manager, she was tasked with improving the performance of the onsite IT team, including Plaintiff. (Ex. B, ¶ 4; Ex. C, ¶ 6).

20.     At Jabil, employees could request onsite IT assistance by (1) submitting an IT ticket, (2) coming to the IT desks to ask a Tech for help, and/or (3) calling the IT desk/Tech for assistance. (Ex. A, 22:16-23:2).

21.     Outside of normal operating hours (5 A.M. to 10 P.M.) and on the weekends, Jabil requires one Tech to perform on-call duty, and this duty is rotated amongst the Tech I and IIs. (Ex. A, 46:8-47:23).

22.     "On call" Support Technicians are compensated for the time spent on call, regardless of whether they handle any calls. (Ex. C, ¶ 16; Ex. D, ¶ 14).  Jabil's expectation is that "on call" Support Technicians will (1) answer the on-call telephone when it rings, (2) immediately begin working on resolving the issue and, (3) depending on the nature and severity of issue, travel to JDAS to resolve the issue if it cannot be resolved remotely. (Ex. C, ¶ 16; Ex. D, ¶ 14-15).

23.     On July 14, 2020, Holton and Eells issued Plaintiff a verbal warning Positive Discipline Notice for his failure to properly perform his on call duties on the weekend of July 11-12, 2020, which resulted in two (2) people in the shipping department being sent home because

they could not perform work due to being locked out of their computers. (Ex. C, ¶¶ 17-20; Ex. D, ¶¶ 16-18; Ex. D-1).

24.     Jabil's HR Generalist Jaclyn Mitchell ("Mitchell") approved the Positive Discipline Notice, prior to Holton and Eells issuing Plaintiff the Notice on July 14, 2020. (Ex. C, ¶¶ 19-20; Ex. D, ¶¶ 17-18).

25.     Plaintiff admits that (1) he did not answer two phone calls from Holton while on-call on July 11, 2020, even though he was aware he was required to answer his phone while on-call, (2) that he did not respond to Holton until three hours after her first call at 11:15 AM, and (3) that his attempt to "resolve" the computer lockout problem by sending an email to these employees was a futile act because the employees "probably [could] not" access the email he sent if they were locked out of their computer. (Ex. A, 38:9-39:20, 40:20-41:4).

26.     Jabil also had an onsite IT phone that Techs must always carry, and there was an agreed schedule between the Techs for carrying the onsite phone. (Ex. A, 44:8-15, 45:25-46:21; Ex. C, ¶¶ 14, 23; Ex. D, ¶¶ 6, 20)

27.     On July 21, 2020, Holton and Eells issued Plaintiff a written warning Positive Discipline Notice for his failure to carry the onsite phone when he was the morning shift Tech. (Ex. C, ¶¶ 22-25; Ex. D, ¶¶ 19-22; Ex. D-2).

28.     HR Generalist Mitchell again approved the Positive Discipline Notice, prior to Holton and Eells issuing Plaintiff the Notice on July 21, 2020. (Ex. C, ¶¶ 24-25; Ex. D, ¶¶ 21-22).

29.     Plaintiff does not recall if he was carrying the onsite phone on July 20, 2020 and did not make any objection(s) on the Positive Discipline Notice. (Ex. A, 44:5-7; Ex. D-2).

30.     At 5:31 AM on Friday, July 31, 2020, Plaintiff sent an email to HR Manager II Deanna Doheny ("Doheny"), with copies to Eells and Holton, alleging discrimination based upon his "Serbian" national origin against his "manager." (Ex. A, 54:22-55:4; Ex. A-22).

31.     Doheny immediately began an investigation and met with Plaintiff the same day (July 31, 2020) to get more information about his claims, which were allegations that Holton was discriminating against him by writing him up when she was not disciplining other Techs for similar infractions. (Ex. B, ¶¶ 6-7, 16; Ex. B-4, pg. 1).

32.     Plaintiff admitted to Doheny that his supervisors (Holton and Eells) never made any negative comments about his Serbian ethnicity. (Ex. B, ¶7).

33.     Plaintiff admits that when he reported Holton for national origin discrimination, he was unaware if Holton was disciplining/writing up other Techs for similar infractions but considered Holton's actions to be discriminatory because he had not been written up in a similar manner by Cooper. (Ex. A, 53:19-54:4, 55:21-56:10, 58:12-20, 60:20-61:5)

34.     Plaintiff admits that he is unaware if Holton knew his national origin was Serbian. (Ex. A, 27:16-28:4, 30:12-18, 43:6-9, 54:5-8).

35.     Holton was unaware of Plaintiff's Serbian national origin prior to the July 31, 2020, email wherein he identified himself as "Serbian." (Ex. C, ¶ 29).

36.     On Monday, August 3, 2020, Doheny interviewed Holton. (Ex. B, ¶ 9; Ex. C, ¶ 30). Holton denied discriminating against Plaintiff due to his national origin and advised Doheny that in July 2020 she (Holton) and Eells had jointly issued Plaintiff a verbal warning and written warning for his failure to perform his on-call duties, including his failure to carry the onsite phone. Holton also told Doheny that Mitchell in HR had reviewed and approved each disciplinary warning for Plaintiff. (Ex. B, ¶ 9; Ex. C, ¶ 30).

37.     Holton advised Doheny that she and Eells had disciplined other employees for similar job performance issues, including (1) Tech II Manny Freitas ("Freitas"), who was issued a verbal warning on June 1, 2020, a written warning on June 29, 2020, a final written warning on July 17, 2020, and then terminated on July 28, 2020, for his repeated job performance issues/failures and (2) a counseling session she and Eells held with Tech I Scott Marsala ("Marsala") regarding complaints about his teamwork from other Techs, including Plaintiff. (Ex. B, ¶¶ 10-11; Ex. C, ¶¶ 31-32; Ex. C-4, C-5 and C-6).

38.     Holton also advised Doheny that in July 2020 she had begun investigating a complaint made by Master Planner Tatianna Lane ("Lane") that she was locked out of her Jabil account because of failed login attempts from Plaintiff's Jabil desktop. (Ex. B, ¶ 12; Ex. C, ¶33).

39.     On August 5, 2020, Doheny interviewed Lane, who reported experiencing ongoing issues with being locked out of her Jabil account.  (Ex. B, ¶¶ 14, 22; Ex. B-5, pg. 1).  Lane received an error message stating she had too many failed login attempts, even though she had not personally had any failed attempts to login prior to the lockout. (Ex. B, ¶¶ 14, 22; Ex. B-5, pg. 1).

40.     Lane reported that in early July 2020, she asked Tech Marsala to explore why she was locked out of her Jabil account due to unsuccessful login attempts after only briefly stepping away from her desk, and that Marsala advised her that she was locked due to unsuccessful login attempts from Plaintiff's Jabil desktop. (Ex. B, ¶¶ 14, 22; Ex. B-5, pg. 1).

41.     Lane also reported to Doheny that Plaintiff's behavior towards her had been concerning since December 2018 when he (1) touched her inappropriately without her consent after the Jabil holiday party, (2) subsequently told her he had "feelings" for her in or around January/February 2019, and (3) made unwelcome advances toward her, including showing up at her home uninvited on two occasions. (Ex. B, ¶¶ 14, 22; Ex. B-5, pg. 1).

42.     HR Manager Doheny, with the assistance of Site IT Manager Holton and IT Architect Rob Ingenthron, reviewed reports from the various Jabil computer systems and programs, which showed that; (1) Plaintiff's Jabil assigned computer attempted to login to Lane's Jabil account using her Jabil employee number username (100063684) on March 30, 2020, April 17, 2020, May 26, 2020, and on July 2, 2020; (2) that on two other occasions, March 30, 2020 and April 17, 2020, Plaintiff's administrator account (JABILDAS\Q1_100042918) had disabled Ms. Lane's computer; and (3) that Ms. Lane had not submitted any IT tickets for service on these dates. (Ex. B, ¶¶ 18-19, 22; Ex. B-3, pg. 1-3; Ex. B-5, pg. 1; Ex. C, ¶¶ 27, 34-35).

43.     For the July 2, 2020 attempt, Doheny also reviewed video of the IT area and found that only Plaintiff appeared to be in his cubicle at his Jabil assigned computer at the time the attempted access of Lane's account occurred. (Ex. B, ¶ 20).

44.     On or about August 12, 2020, HR Manager Doheny provided Plaintiff with her investigative findings regarding his complaint of discrimination against Holton. (Ex. B, ¶ 16). Doheny advised Plaintiff that his suspicion that Holton was not disciplining other Techs for violations of rules, policies and/or job performance failures was incorrect, and that there was no evidence that Holton was treating him differently due to his Serbian national origin. (Ex. B, ¶ 16; Ex. B-4, pg. 1-2).

45.     Plaintiff advised Doheny that he did not have any other concerns he wanted her to investigate, so Doheny informed him the investigation was closed. (Ex. B, ¶ 16, Ex. B-4, pg. 1-2).

46.     On August 14, 2020, Doheny interviewed Plaintiff regarding Lane's allegations that he locked her out of her Jabil account because of too many unsuccessful login attempts. (Ex. B, ¶ 21). Plaintiff claimed that he had locked himself out of his Jabil account, so he created a fake username and used a "random" employee identification number to try to gain access; however,

Plaintiff could not offer any explanation as to (1) why he had repeatedly used the same "random" employee identification number belonging to Lane; (2) why these "random" attempts after he had a "lockout" occurred on multiple different dates; or (3) why he had administratively disabled Lane's computer on two occasions. (Ex. B, ¶¶ 21-22, Ex. B-5, pg. 1).  In fact, Plaintiff failed to provide any legitimate reason for attempting to access Lane's Jabil account when she had not submitted an IT ticket or asked for his assistance. (Ex. B, ¶¶ 21-22, Ex. B-5, pg. 1).

47.     Doheny determined Plaintiff had committed a serious violation of Jabil's Security Policy and Code of Conduct by trying to access Lane's Jabil account and disabling her computer without authorization and recommended that his employment be terminated. (Ex. B, ¶¶ 22-24; Ex. B-5, pg. 1).

48.     Doheny advised Jabil's Director of Operations, Ron Anderson ("Anderson") and Holton, of her recommendation to terminate Plaintiff's employment for his breach of Jabil's policies, and they agreed with the recommendation. (Ex. B, ¶ 24; Ex. C, ¶ 39; Ex. E, ¶¶ 6-8).

49.     On August 18, 2020, Anderson and Doheny met with Plaintiff via Microsoft Teams and advised him that his employment with Jabil was being terminated due to his violation of Jabil policies. (Ex. A, 61:15-62:12; Ex. B, ¶ 25).  The meeting occurred via Microsoft Teams because Plaintiff was on paid COVID-19 leave since August 3, 2020, when he reported having symptoms. (Ex. B, ¶8).

50.     At no point during this meeting did Mr. Subotic raise the issue of national origin discrimination or claim that he was being terminated in retaliation for his complaint of national origin discrimination. (Ex. B, ¶ 25).

51.     On the same day, August 18, 2020, Holton and Eells issued Tech I Eric Flynn ("Flynn") a verbal warning Positive Discipline Notice for his failure to carry the on-call phone

when he was the Tech designated as on-call for the week of August 10-17, 2020. (Ex. C, ¶¶ 36-38; Ex. C-8; Ex. D, ¶ 23).

## III.   MEMORANDUM OF LAW

### A.   *Defendant is entitled to Summary Judgment on Counts I and III of Plaintiff's Complaint Because Plaintiff Cannot Establish a Prima Facie Claim of Title VII or FCRA National Origin Discrimination and/or Prove Pretext for Discrimination*

#### i.   <u>Plaintiff cannot establish a *prima facie* claim of discrimination</u>

In order to establish the elements of claim for national origin discrimination under Title VII and/or the Florida Civil Rights Act (FCRA), the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing that:

(1)   he belongs to a protected class,
(2)   he was subjected to an adverse employment action,
(3)   he was qualified to perform the job in question, and
(4)   his employer treated "similarly situated" employees outside his class more favorably.

*Lewis v. City of Union City*, 918 F.3d 1213, 1220-21 (11th Cir. 2019).

Even if Plaintiff could establish the first three elements - that he belonged to a protected class (Serbian), was subjected to an adverse employment action (terminated) and was qualified for his position - Plaintiff cannot establish a *prima facie* claim of Title VII or FCRA discrimination because he has not presented – and cannot present – any evidence that "similarly situated" employees outside his protected class were treated more favorably than him. Plaintiff confirmed at his deposition that it was merely his speculation that Holton was not disciplining other Techs, and that he had no personal knowledge of the disciplinary actions Holton had taken against other Techs. (Ex. A, 53:19-54:4, 58:12-20). Clearly, Holton disciplined other non-Serbian Techs for their violations of Jabil's rules and policies in the same manner as Plaintiff, even if he was not personally aware of it during his employment at Jabil. (Ex. C, ¶¶31, 36-38; Ex. C-4, C-5, C-6 and

C-8; Ex. F, Response to Request #6). Thus, Plaintiff has not and cannot offer any evidence of a similarly situated comparator outside his protected class that was treated more favorably that him.[1]

  ii. Plaintiff cannot establish that Defendant's legitimate, non-discriminatory reason for his termination is pretext for discrimination

  Even if Plaintiff could prove a *prima facie* case of discrimination (which Defendant denies), Jabil has a legitimate non-discriminatory reason for his termination. Here, Jabil has presented evidence that: (1) Doheny's investigation into Lane's complaint against Plaintiff substantiated Lane's allegations that Plaintiff tried to access her Jabil account without authorization; (2) Doheny determined that Plaintiff's attempts to access Lane's Jabil account and his use of his administrator account to disable her Jabil computer were in violation of Jabil's Security Policy and Code of Conduct; and (3) the Security Policy explicitly states that any violation of the policy is "a serious offense" and that employees who violate the Security Policy will be "subject to disciplinary action, **up to and including termination**…" (Ex. B, ¶¶ 22-23; Ex.

_____

[1] Plaintiff has also conclusively claimed that several other Jabil employees participated in discriminatory/retaliatory behavior towards him. Specifically, Plaintiff claims that he was discriminated against when (1) Eells denied him a day of PTO he requested, even though Eells advised him that the reason he could not have the date requested was because two other Techs already had that day off; (2) employee Amy Stoll sent an email to several IT employees claiming that Subotic was the last person to have a now missing flash drive, which he denied; (3) employee Mark Suzanski submitted an IT ticket which was held in the queue for "weeks" by employee Michael Bergman before passing it on to Subotic and then Suzanski asked Subotic about it either the same day or following day after Subotic received it; (4) employee Michael Bergman held the IT ticket Mark Suzanski had submitted; (5) Tech Michael Ho would "rarely" go to the production floor the last few weeks Plaintiff was employed to provide IT assistance and only helped employees remotely from his desktop, which "made his job harder"; and (6) Tech Marsala would also "rarely" go to the production floor the last few weeks Plaintiff was employed to provide IT assistance and only helped employees remotely from their desktops and once declined some food Plaintiff offered him and stated "I'm not going to eat your pity ethnic food." (Ex. A, 64:16-73:20). However, Plaintiff can provide no reason why these acts were discriminatory/retaliatory and admits that he does not know if many of these individuals were even aware he was of Serbian national origin. *Id*. Doheny investigated Plaintiff's claims against Eells, Ho and Marsala and found no support for Plaintiff's claims of discrimination. (Ex. B-4, pg. 1-2). Plaintiff received no discipline for the ticket issue with Suzanski/Bergman or Stoll's claim that he lost a flash drive. (Ex. C, ¶30). Accordingly, Plaintiff has failed to present evidence these acts were discrimination related to his national origin and/or retaliation for his compliant of alleged discrimination. *See Austin v. City of Montgomery*, No. 05-16737, 196 Fed. Appx. 747, 2006 U.S. App. LEXIS 19810, 2006 WL 2219726, at *3 (11th Cir. Aug. 2, 2006) (unpublished).

B-5, pg. 1; Ex. B-6, pg. 5 - Sections 6.9.4 – 6.9.5)(emphasis added).  Based on Doheny's findings and recommendation, Jabil terminated Plaintiff's employment for his violation of Jabil's Security Policy and Code of Conduct. (Ex. B, ¶¶ 22-25; Ex. F, Response to Request #5). Accordingly, Jabil has articulated a legitimate, non-discriminatory reason for Plaintiff's termination. *See Jenner v. Bank of America Corp.*, 304 Fed. App' x. 857, 859-60 (11th Cir. 2009)(multiple violations of policy constitute legitimate business reason for termination); *Odum v. Government Employees Ins. Co.*, No. 8:08-cv-1282-T-24-EAJ, 2009 U.S. Dist. LEXIS 59397, 2009 WL 2134918, at * 4 (M.D. Fla. July 13, 2009) (same).

Consequently, Plaintiff is required to prove that Jabil's legitimate reason for his termination is pretext for discrimination. *Lewis*, 918 F.3d at 1221. To do so, Plaintiff must prove both that (1) each of the proffered reasons for his termination is false, and (2) the real reason is national origin discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir.), *cert. denied*, 552 U.S. 991 (2007) (*citing Chapman v. AI Transp.*, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc)). To make this proof, Plaintiff must present "significant probative evidence" of pretext. *Lockett v. Choice Hotels Intern'l, Inc.*, 315 Fed. Appx. 862 (11th Cir. Feb. 26, 2009). His own speculation and conjecture are insufficient. *Isenbergh v. Knight-Ridder Newspaper Sales*, 97 F.3d 436, 444 (11th Cir. 1996). Similarly, it is insufficient for Plaintiff to assert, or even to prove, that Defendant was mistaken in its conclusions about Plaintiff's misconduct; instead, Plaintiff must prove that the proffered reasons – good, bad, mistaken, or otherwise – were not the real reasons (and that the real reason was his national origin). *See Spann v. DynCorp Tech. Servs.*, LLC, 184 F. App'x 872, 875 (11th Cir. 2006) ("Showing that an employer is mistaken in its belief of a nondiscriminatory reason does not prove pretext.").

Instead, Plaintiff conclusively asserts that he was terminated by Holton because of his "national origin" without any further explanation or evidence. (Ex. A, 82:20-83:14). Yet Plaintiff admits that: (1) he does not know who made the determination to terminate his employment; (2) he "do[es not] recall" what reason Jabil gave him for his termination; and (3) he does not even deny he tried to improperly access Lane's Jabil account. (Ex. A, 82:20-83:14, 85:20-25, 96:13-18). Conversely, Jabil has presented evidence that: (1) Doheny's independently investigated Lane's claims that Plaintiff tried to access her Jabil account; (2) Doheny determined that Plaintiff's attempts to access Lane's Jabil account and his use of his administrator account to disable her Jabil computer were in violation of Jabil's Security Policy; (3) based on her findings, Doheny made the recommendation to terminate Plaintiff's employment for his violation of Jabil's Security Policy; and (4) Holton and Anderson both agreed with Doheny's recommendation. (Ex. B, ¶¶ 14-15, 17-25; Ex. B-5, pg. 1; Ex. C, ¶ 39; Ex. E, ¶ 6-8).

As a result, Plaintiff can present no evidence whatsoever to disprove that Jabil had a good faith belief that he had committed a serious violation of its policies. That leaves Plaintiff only to question the wisdom of Jabil's proffered reason for termination; however, under the well-established business judgment rule, "[a] plaintiff cannot show pretext by recasting an employer's proffered nondiscriminatory reasons or substituting his business judgment for that of the employer. The employee must meet each of the employer's proffered reasons head on and cannot succeed by simply quarreling with the wisdom of [a] reason." *Collier v. Harland Clarke Corp.*, 820 F. App'x 874, 880 (11th Cir. July 8, 2020)(quoting *Chapman*, 229 F.3d at 1030) (other citation and internal quote marks omitted). Because Plaintiff cannot prove that the proffered reason for his termination is false, he cannot prove pretext.

Even if Plaintiff could prove Jabil's proffered reasons were false (which he cannot), he has no evidence whatsoever that the real reason for his termination was his Serbian national origin. Plaintiff testified repeatedly that he did not know if Holton was aware that he was of Serbian national origin and can present no evidence that Holton was aware of his national origin prior to his July 31st email identifying himself as being of Serbian national origin. (Ex. A, 27:16-28:4, 30:15-18, 43:6-9, 54:5-8; Ex. C, ¶ 29). In addition, the decision to terminate Plaintiff for violation of the Security Policy was made collectively by Holton, Anderson, and Doheny – not just Holton – and Plaintiff has never even alleged that Anderson or Doheny discriminated against him due to his Serbian national origin. (Ex. A-7, pg. 1-2; Ex. B, ¶¶ 22-25; Ex. B-5). Either way, fatally absent from Plaintiff's allegations and deposition testimony is any evidence, whatsoever, that his national origin was the "real reason" for his discharge. Plaintiff's unsupported, conclusory assertions to the contrary are not evidence, and simply do not satisfy the requirements to establish a claim of national origin discrimination. Accordingly, Defendant is entitled to Summary Judgment on Count I (Title VII national origin discrimination) and Count III (FCRA national origin discrimination).

B.   *Defendant is entitled to Summary Judgment on Counts IV and VI of Plaintiff's Complaint Because Plaintiff Cannot Establish a Prima Facie Claim of Title VII or FCRA National Origin Retaliation and/or Prove Pretext for Retaliation*

i.   Plaintiff cannot establish a *prima facie* claim of retaliation

In order to establish his *prima facie* retaliation claim, a plaintiff must prove that: (1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) there was a causal link between the protected activity and the adverse action. *See Walker v. Sec'y, U.S. Dep't of Air Force*, 518 F. App'x 626, 627 (11th Cir. 2013). To constitute protected activity, an internal complaint must meet two requirements: (a) it must put the employer on notice that the plaintiff is opposing a practice made unlawful by Title VII/FCRA and (b) it must be based

on **a good faith reasonable belief** that the employer engaged in unlawful discrimination. *See Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010); *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999) (an employee must have a "good faith, reasonable belief" that the employer has engaged in unlawful discrimination). In the instant case, it is clear Plaintiff lacked a good faith, reasonable belief that Jabil engaged in unlawful national origin discrimination.

To meet the second prong, a plaintiff must show both that he "subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practice" and also "that his belief was objectively reasonable in light of the facts and record presented." *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1213 (11th Cir. 2008). Here, Plaintiff did not have a subjective good faith belief that he was subjected to discriminatory discipline and, in fact, his complaint that he was "singled out" for discipline due to his national origin is objectively and patently false. At his deposition, Plaintiff blatantly admitted that he was totally unaware if Holton issued discipline to other Techs on his team; thus, he could not have held a "good faith" belief he was "singled out" for discipline when he had no knowledge whatsoever whether others were disciplined. (Ex. A, 53:19-54:4, 58:12-20). Also, as shown above, Holton most certainly disciplined other, non-Serbian, Techs outside of Plaintiff's protected class for violations of rules and policies, which renders Plaintiff's claims that he was "singled out" for discipline due to his national origin objectively false. (Ex. C, ¶¶31, 36-38; Ex. C-4, C-5, C-6 and C-8; Ex. F, Response to Request #6).

Even if he could prove that he engaged in protected activity (which he did not), Plaintiff cannot prove there is a causal link between his report of discrimination and his termination. "[A] plaintiff is required to present at summary judgment enough evidence from which a reasonable juror could find [his] protected activity was a but-for cause of the adverse employment action."

*James v. City of Montgomery*, 823 F. App'x 728, 735 (11th Cir. 2020). Here, Plaintiff has provided no evidence that his complaint of discrimination had any relation to his termination other than his wholly conclusory claim and subjective belief that the two were related (despite admitting that he does not even know who made the decision to terminate him). (Ex. A, 82:20-83:14, 96:13-18). To the extent Plaintiff may rely on the temporal proximity of his complaint and his termination, such proximity is insufficient to establish retaliation in the instant case. Indeed, an intervening act of misconduct by the plaintiff can break the causal link between the protected conduct and the adverse employment action. *Henderson v. FedEx Express*, 442 F. App'x 502, 506 (11th Cir. 2011)(citing *Kiel v. Select Artificials, Inc*., 169 F.3d 1131, 1136 (8th Cir. 1999)(*en banc*). Here, Plaintiff clearly engaged in an intervening act of misconduct, because Jabil discovered – after he complained of purported discrimination – that Plaintiff violated Jabil's Security Policy and Code of Conduct when he attempted to access Lane's Jabil account and improperly disabling her Jabil computer. (Ex. B, ¶¶ 12-15, 17-25; Ex. B-5).

ii.   Plaintiff cannot establish that Defendant's legitimate, non-discriminatory reason for his termination is pretext for retaliation

Even if Plaintiff could make out a *prima facie* case of Title VII/FCRA retaliation (which he cannot), his claim still fails because Jabil had legitimate, non-retaliatory reasons for terminating his employment due to his repeated, unauthorized attempts to gain access to Lane's Jabil account and misuse of his administrator account to disable her computer. (Ex. B, ¶¶ 22-23; Ex. B-5, pg. 1; Ex. B-6, pg. 5 - Sections 6.9.4 – 6.9.5). Plaintiff's lack of memory of the incidents is irrelevant, because "the question is not whether Plaintiff actually engaged in the alleged misconduct, but rather, it is whether the [decision maker] in good faith believed the reports of misconduct." *Clark v. S. Broward Hosp. Dist*., 601 F. App'x 886, 896 (11th Cir. 2015). Here, Plaintiff does not deny that he engaged in the misconduct alleged.  (Ex. A, 85:20-25). Moreover, Defendant has presented

irrefutable evidence that Holton, Anderson, and Doheny had a good faith belief that Plaintiff had committed the misconduct for which he was terminated.[2] (Ex. B, ¶¶17-25; Ex. C, ¶¶35, 39; Ex. E, ¶¶6-9). In fact, the system logs upon which the decisionmakers relied in making the termination decision conclusively prove that Plaintiff accessed another Jabil employee's account without business reason or authorization, which constitutes a clear breach of Jabil's policies. (Ex. B-3, pg. 1-3).

Because Jabil has proffered lawful reasons for its actions, Plaintiff is required to prove pretext. As previously discussed above, Plaintiff has not presented and cannot present any evidence that his Serbian national origin and/or complaint of discrimination – rather than his egregious misconduct and abuse of authority – was the reason for his termination. Accordingly, Defendant is entitled to Summary Judgment on Count IV (Title VII retaliation) and Count VI (FCRA retaliation) of Plaintiff's Complaint.

C. *Defendant is Entitled to Summary Judgment on Counts II and V Because Plaintiff has Failed to Allege His Race as a Basis of His Claims Under 42 U.S.C. 1981 and He Cannot Establish a Prima Facie Claim of Race Discrimination or Retaliation and/or Pretext under Section 1981*

i. <u>Plaintiff claims of discrimination and retaliation under 42 U.S.C. § 1981 should be dismissed because they are improperly based on his national origin</u>

Pursuant to 42 U.S.C. § 1981(a) ("Section 1981"),

[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**While Section 1981 allows a cause of action for discrimination based on race, it does not**

---

[2] Defendant has also shown that the investigation into this misconduct by Plaintiff began ***prior*** to his complaint of discrimination. (Ex. C, ¶¶ 26-27).

**provide a basis for bringing a claim of discrimination or retaliation based on national origin**. *See, Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987); *see also, Bedoya v. Hilti, Inc*., 159 F. App'x 91, 92 (11th Cir. 2005)(affirming summary judgment for employer on claims of discrimination and retaliation under Section 1981 based on national origin as such "were not actionable under section 1981"); *Moghadam v. Morris*, 87 F. Supp. 2d 1255, 1256 n.1 (N.D. Fla. 2000); *Batton v. Tarmac Am*., No. 05-21707-CIV-ALTONAGA/Tur, 2005 U.S. Dist. LEXIS 57227, at *5-7, 9-10 (S.D. Fla. Nov. 18, 2005)(noting that "no single case has been identified where a court recognized a section 1981 claim notwithstanding the fact that a plaintiff *explicitly, and exclusively*, pled the claim as one based upon national origin discrimination")(emphasis in original).

Here, Plaintiff's Complaint is clear that his Section 1981 claims are based **<u>solely</u>** upon his national origin and not his race.[3] In Count II, Plaintiff claims that he "is in a protected class within the meaning of 42 U.S.C. § 1981 by virtue of his national origin, Serbian." [Dkt. 1, ¶46]. Likewise, in Count V, Subotic claims that he engaged in protected conduct within the meaning of Section 1981 when "he reported what he reasonably believed to be national origin-based discrimination." [Dkt. 1, ¶67]. Accordingly, there is no merit to either Count II or Count V as Section 1981 does not provide a basis for bringing a claim of discrimination or retaliation based on national origin.

ii.   <u>Plaintiff cannot establish a *prima facie* claim of discrimination or retaliation</u>

Even if the Court was to find that Plaintiff had somehow stated a proper claim discrimination and/or retaliation under Section 1981 based on his Serbian "national origin" (which he cannot), Plaintiff cannot establish a *prima facie* claim of discrimination or retaliation under 1981. "Section 1981 requires proof of *intentional* discrimination." *Brown v. American Honda*

---

[3] In fact, the terms "race" and/or "ethnicity" are not ever used in Plaintiff's Complaint. [Dkt. #1].

*Motor Co. Inc.*, 939 F.2d 946, 949 (11th Cir. 1991) (citing to *General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 391 (1982) and *Washington v. Davis*, 426 U.S. 229, 246-48 (1976)(emphasis in original); *Comcast Corp.*, 140 S. Ct. 1009, 1015 (2020). The test for intentional discrimination and retaliation in actions brought under section 1981 is the same as the formulation used in Title VII discrimination and retaliation cases. *Brown*, 939 F. 2d at 949 (noting that the familiar *McDonnell Douglas/Burdine* framework applies to claims under Section 1981).

As discussed above, Plaintiff cannot establish a *prima facie* case of discrimination based on his race/Serbian national origin because he cannot present any evidence that "similarly situated" employees outside his protected class were treated more favorably than him. As shown above, Holton disciplined other, non-Serbian, Techs for violations of rules and policy in the same manner as Plaintiff. (Ex. C, ¶¶31, 36-38; Ex. C-4, C-5, C-6 and C-8; Ex. F, Response to Request #6). Plaintiff has not presented and cannot present evidence to support his conclusory claims that Holton disciplined him more harshly than Techs of other races/national origins.

Similarly, as discussed above, Plaintiff cannot establish a *prima facie* case of retaliation based on his discriminatory discipline complaint. Plaintiff did not engage in statutorily protected activity because he did not have a subjective, good faith belief that his complaints about being "singled out" discipline due to his race/Serbian national origin were true, because Plaintiff readily admits he has no knowledge whatsoever whether Holton disciplined other Techs. (Ex. A, 53:19-54:4, 58:12-20). In fact, any reasonable person would find this claim to be objectively false as well, because Holton clearly and consistently disciplined other, non-Serbian, Techs for violations of rules and policy in the same manner as Plaintiff. (Ex. C, ¶¶31, 36-38, Ex. C-4, C-5, C-6 and C-8; Ex. F, Response to Request #6). Further, Plaintiff provided no evidence that his complaint of national origin discrimination had any relation to his termination other than his conclusory claim

that the two were related. Regardless, Plaintiff cannot present any evidence that that his complaint of discrimination, rather than his egregious misconduct and abuse of his IT position, was the reason for his termination.

### iii.  Plaintiff cannot establish that Defendant's legitimate non-discriminatory reason for his termination is pretext for race discrimination or retaliation

Even if Plaintiff could prove a *prima facie* case of Section 1981 discrimination or retaliation, his claim still fails because Jabil had legitimate, non-retaliatory reasons for terminating his employment due to his violations of Jabil's Security Policy and Code of Conduct. Thus, Plaintiff is required to prove that Jabil's legitimate reason for his termination is pretext for discrimination/retaliation. Again, as stated more fully above, Plaintiff cannot prove pretext because he cannot prove (1) that the proffered reason for his termination is false or (2) that the real reason for his termination was his race/retaliation.[4] *Brown*, 939 F.2d at 249-250. Plaintiff does not deny he attempted to access Lane's Jabil account and there is no evidence that Jabil was motivated by any reason other than its good faith belief he committed a serious violation of its policies. (Ex. A, 85:20-25; Ex. B, ¶¶17-25; B-5, pg. 1-2; Ex. C, ¶¶35, 39; Ex. E, ¶¶6-9).

Furthermore, Plaintiff testified repeatedly that did not know if Holton was aware that he was of Serbian origin, and he cannot present evidence that Holton was aware of his national origin prior to his July 31 email identifying himself Serbian. (Ex. A, 27:16-28:4, 30:15-18, 43:6-9, 54:5-8; Ex. C, ¶ 29). Once again, the decision to terminate Plaintiff was made collectively by Holton, Anderson, and Doheny – not just Holton – and Plaintiff has never even alleged that Anderson or Doheny discriminated against him due to his national origin. (Ex. A-7, pg. 1-2; Ex. B, ¶¶ 22-25; Ex. B-5). Fatally absent from Plaintiff's allegations and deposition testimony is any evidence,

---

[4] All of the decisionmakers at issue – Doheny, Holton and Anderson – are the same race as Plaintiff. (Ex. A, 52:22-24; Ex. B, ¶1; Ex. C, ¶1, Ex. E, ¶1).

whatsoever, that his race/Serbian national origin was the "real reason" for his discharge. Accordingly, Defendant is entitled to Summary Judgment on Count II (Section 1981 discrimination) and Count V (Section 1981 retaliation) of Plaintiff's Complaint.

> D. *Defendant is Entitled to Summary Judgment on Count VII of Plaintiff's Complaint because Plaintiff Cannot Establish a Prima Facie Claim of FWA Retaliation and/or Pretext for Retaliation*

The FWA provides that "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. §448.102(3). To prove a *prima facie* case under this provision, Plaintiff must establish that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally linked to the protected activity. *Graddy v. Wal-Mart Stores E., LP*, 237 F. Supp. 3d 1223, 1226 (M.D. Fla. 2017)(citing *Kearns v. Farmer Acquisition Co*., 157 So. 3d 458, 462 (Fla. 2d DCA 2015)). If the plaintiff presents a *prima facie* case, the burden shifts to the defendant employer to articulate a legitimate non-retaliatory reason for its adverse employment action. *Graddy*, 237 F. Supp. 3d at 1226. Then, if the defendant employer meets its burden, the burden shifts back to the plaintiff employee to establish that defendant's articulated reasons are pretextual. *Id.*

Regarding the first prong, the FWA requires Plaintiff to prove in the context of this case that he objected to or refused to participate in a "*violation of a law*, rule, or regulation." § 448.102(3) (emphasis added). The statute is plainly worded as requiring the plaintiff to prove conduct that is *in violation* of the law, and courts have held that in conformity with the plain wording of the statute, an actual violation of law is required. *Graddy v. Wal-Mart Stores E., LP*, 237 F. Supp. 3d at 1228; *Norman v. Bright Horizons Family Solutions, LLC*, No. 8:12-CV-1301-

T-17TBM; *Odum v. Gov't Emps. Ins. Co*., No. 8:08-CV-1282-T-24-EAJ, 2009 U.S. Dist. LEXIS

59397, 2009 WL 2134918, at *3 (M.D. Fla. July 13, 2009), *aff'd*, 405 F. App'x 396 (11th Cir.

2010);  *Paulet v. Farlie, Turner & Co., LLC*, 2010 U.S. Dist. LEXIS 62072, 2010 WL 2232662,

at *2 (S.D. Fla. June 2, 2010); *Smith v. Psychiatric Solutions, Inc*., 2009 U.S. Dist. LEXIS 27608,

2009 WL 903624, at *7 (N.D. Fla. March 31, 2009)

　　　As a threshold matter, Plaintiff admits that he did not complain to Jabil of a "violation of a

law, rule, or regulation." (Ex. A, 62:23-64:1). Even if he did have such a complaint, Subotic cannot

establish a *prima facie* case of FWA retaliation because he cannot show that he objected to conduct

that is actually "in violation of the law." Plaintiff claims he engaged in protected activity under the

FWA by complaining of national origin discrimination. [Dkt. 1, ¶81]. However, as discussed above

in Section III.A.i, Plaintiff cannot establish a *prima facie* claim of national origin discrimination,

and it is clear that he did not have either a subjectively or objectively reasonable belief that he was

being subjected to national origin discrimination.[5] *See*, *Gleason v. Roche Labs., Inc*., 745 F. Supp.

2d 1262 (M.D. Fla. 2010)(employee's belief that her supervisor had illegally sexually harassed her

was neither subjectively, nor objectively reasonable, so she did not establish a *prima facie* case

under the FWA and her former employer was entitled to summary judgment on her claim that it

violated the FWA by discharging her in retaliation for her complaint of sexual harassment).

Furthermore, as discussed above in Section III.B.i, Plaintiff cannot prove there is a causal link

between his report of alleged discrimination and his termination. While Plaintiff will argue the

temporal proximity between his complaint of discrimination and his termination is evidence of

retaliation, there was an act of intervening misconduct by Plaintiff which breaks the causal link,

as it was discovered by Jabil that Plaintiff had violated Jabil's Security Policy and Code of Conduct

---

[5] Ex. A, 53:19-54:4, 58:12-20; Ex. C, ¶¶31, 36-38, Ex. C-4, C-5, C-6 and C-8; Ex. F, Response to Request #6.

by attempting to access Lane's Jabil account and improperly disabling her Jabil computer <u>after he complained of discrimination</u>. (Ex. B, ¶¶ 14-15, 17-25; Ex. B-5).

Even if Plaintiff could establish a *prima facie* claim of FWA retaliation (which he cannot), he cannot establish that Defendant's legitimate non-discriminatory reasons are pretextual. As discussed above in Section III.A.ii, Defendant has provided evidence that the decision to terminate Plaintiff was made collectively by Doheny, Holton and Anderson and was based upon their good faith belief that Plaintiff had violated Jabil's Security Policy and Code of Conduct. (Ex. B, ¶¶17-25; B-5, pg. 1-2; Ex. C, ¶¶35, 39; Ex. E, ¶¶6-9). Plaintiff has never accused either Doheny or Anderson of discriminating or retaliating against him. (Ex. A-7, pg. 1-2). Furthermore, Plaintiff has never provided any evidence, of any kind, that his complaint of national origin discrimination was the "real reason" for his discharge and his unsupported, conclusory assertions to the contrary are not evidence of pretext. Accordingly, Defendant is entitled to Summary Judgment on Count VII (FWA retaliation) of Plaintiff's Complaint.

WHEREFORE, Defendant Jabil, Inc. respectfully requests that the Court enter summary judgment on all counts (Counts I-VII) of Plaintiff's Complaint.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 10, 2022, a true and correct copy of the foregoing was served via to: THORPELAW, P.A., Shania Thorpe, Esq. (shania@thorpelaw.net) 1228 East 7th Ave., Ste. 200 Tampa, Florida 33605 Attorney for Plaintiff.

Respectfully Submitted,

<u>s/ Dennis A. Creed</u>
Dennis A. Creed, III, Esq.
Florida Bar No. 0043618
Email: dcreed@creedlawgroup.com
Bradley R. Hall, Esq.
Florida Bar No.: 26172

Email: bhall@creedlawgroup.com
For the firm
Creed Law Group, PLLC d/b/a Creed & Hall
13043 W Linebaugh Ave
Tampa, FL 33626
Telephone: (813) 444-4332
Facsimile: (813) 441-6121
Attorneys for Defendant Jabil, Inc.